**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ana Patricia Pangburn Ramirez,<br><br>              Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>              Defendant. | No. CV-16-04234-PHX-JZB<br><br>**ORDER** |

Plaintiff Ana Patricia Pangburn Ramirez seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied her disability insurance benefits and supplemental security income under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. Because the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence and is not based on legal error, the Commissioner's decision will be affirmed.

## I.     Background.

On September 19, 2012, Plaintiff applied for disability insurance benefits and supplemental security income, alleging disability beginning August 28, 2012. On January 12, 2015, she appeared with her attorney and testified at a hearing before the ALJ. A vocational expert also testified. On April 8, 2015, the ALJ issued a decision that Plaintiff was not disabled within the meaning of the Social Security Act. The Appeals

1  Council denied Plaintiff's request for review of the hearing decision, making the ALJ's

2  decision the Commissioner's final decision.

3  **II.     Legal Standard.**

4          The district court reviews only those issues raised by the party challenging the

5  ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court

6  may set aside the Commissioner's disability determination only if the determination is

7  not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d

8  625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a

9  preponderance, and relevant evidence that a reasonable person might accept as adequate

10 to support a conclusion considering the record as a whole. *Id.* In determining whether

11 substantial evidence supports a decision, the court must consider the record as a whole

12 and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.*

13 As a general rule, "[w]here the evidence is susceptible to more than one rational

14 interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be

15 upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

16         Harmless error principles apply in the Social Security Act context. *Molina v.*

17 *Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless if there remains

18 substantial evidence supporting the ALJ's decision and the error does not affect the

19 ultimate nondisability determination. *Id.* The claimant usually bears the burden of

20 showing that an error is harmful. *Id.* at 1111.

21         The ALJ is responsible for resolving conflicts in medical testimony, determining

22 credibility, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir.

23 1995). In reviewing the ALJ's reasoning, the court is "not deprived of [its] faculties for

24 drawing specific and legitimate inferences from the ALJ's opinion." *Magallanes v.*

25 *Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

26 **III.    The ALJ's Five-Step Evaluation Process.**

27         To determine whether a claimant is disabled for purposes of the Social Security

28 Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the

burden of proof on the first four steps, but at step five, the burden shifts to the Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is still capable of performing past relevant work. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work based on the claimant's RFC, age, education, and work experience. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

At step one, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2017, and that she has not engaged in substantial gainful activity since August 28, 2012. At step two, the ALJ found that Plaintiff has the following severe impairments: "chronic anal fissure, migraines, diabetes mellitus, obesity, sleep apnea, and depression." (AR 18.) At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. At step four, the ALJ found that Plaintiff has the RFC to perform:

> light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that the claimant can occasionally lift 50 pounds and occasionally lift 25 pounds; the claimant can stand or walk for 4 hours in an 8-hour workday and sit for 6 hours in an 8-hour workday; the claimant can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl but never climb ladders, ropes or scaffolds; the claimant should avoid moderate

exposure to extreme cold and excessive noise, use of hazardous machinery not including motor vehicles and moderate exposure to unprotected heights; the claimant is able to work in positions where the complexity of the tasks are learned and performed by rote with few variables and little judgment required; and the claimant is able to work in jobs where interpersonal contact is incidental to the work performed and supervision is simple, direct, and concrete.

(AR 20.)

The ALJ further found that Plaintiff is unable to perform any of his past relevant work. At step five, the ALJ concluded that, considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff could perform.

## IV. Analysis.

Plaintiff argues the ALJ erred in his decision by: (1) rejecting the assessments of Plaintiff's treating physician, in favor of according "significant weight" to the opinion of a state agency reviewer; (2) rejecting the assessment of the psychiatric consultative examiner, instead assigning "significant weight" to opinions of non-examining reviewers; (3) rejecting Plaintiff's symptom testimony; (4) failing to account for Plaintiff's moderate limitations in concentration, persistence, or pace in the determination of Plaintiff's RFC; and (5) finding Plaintiff was not disabled "based on the assumption [she] could perform jobs as an assembler and packer, jobs that required light exertional capacities." (Doc. 25.) The Court will address each argument below.

### A. Weighing of medical source evidence.

Plaintiff first argues that the ALJ improperly weighed the medical opinions of Plaintiff's treating physician, Dr. Christine Harter, and of the state's psychiatric consultative examiner, Dr. Sharon Steingard. The Court will address the ALJ's treatment of each opinion below.

#### 1. Legal Standard.

The Ninth Circuit distinguishes between the opinions of treating physicians, examining physicians, and non-examining physicians. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, an ALJ should give greatest weight to a treating

- 4 -

physician's opinion and more weight to the opinion of an examining physician than to one of a non-examining physician. *See Andrews v. Shalala*, 53 F.3d 1035, 1040-41 (9th Cir. 1995); *see also* 20 C.F.R. § 404.1527(c)(2)-(6) (listing factors to be considered when evaluating opinion evidence, including length of examining or treating relationship, frequency of examination, consistency with the record, and support from objective evidence). If it is not contradicted by another doctor's opinion, the opinion of a treating or examining physician can be rejected only for "clear and convincing" reasons. *Lester*, 81 F.3d at 830 (citing *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). A contradicted opinion of a treating or examining physician "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31 (citing *Andrews*, 53 F.3d at 1043).

An ALJ can meet the "specific and legitimate reasons" standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986). But "[t]he ALJ must do more than offer [her] conclusions. [She] must set forth [her] own interpretations and explain why they, rather than the doctors', are correct." *Embrey*, 849 F.2d at 421-22. The Commissioner is responsible for determining whether a claimant meets the statutory definition of disability and does not give significance to a statement by a medical source that the claimant is "disabled" or "unable to work." 20 C.F.R. § 416.927(d).

### 2. Christine Harter, M.D.

Dr. Harter was Plaintiff's treating physician from at least September 2011 through April 2014. (*See* AR 338-39, 528.) During that time period, Dr. Harter regularly provided Plaintiff with treatments intended to assist her with her headaches, including administering "repeated chemodenervation injections" and prescribing medication such as Topiramate, Imitrex, and Migranal. (*See* AR 436, 433, 430, 427, 424, 421, 538, 535, 532, 529.) On March 27, 2013, Dr. Harter completed a Headache Residual Functional Capacity Questionnaire, in which she answered "yes" to the form question: "[d]uring

times [Plaintiff] has a headache, would [Plaintiff] be precluded from performing even basic work activities and need a break from the workplace." (AR 412.) On January 5, 2015, Dr. Harter completed a second Headache Residual Functional Capacity Questionnaire in which she reaffirmed that opinion, again answering "yes" to the same question. (AR 735.)

Also on January 5, 2015, Dr. Harter completed a Medical Assessment Of Ability To Do Work Related Physical Activities. (AR 737.) Therein, Dr. Harter indicates Plaintiff has the following exertional limitations: (1) "[o]ccasionally lift and/or carry: 10 lbs;" (2) "[f]requently lift and/or carry: less than 10 lbs;" (3) "[s]tand and/or walk (with normal breaks) for a total of: at least 2 hours in an 8 hour work day;" and (4) "[s]it (with normal breaks) for a total of" four hours "in an 8 hour work day." (AR 737.) Dr. Harter further opines that Plaintiff must alternate sitting and standing due to her symptoms, and is required to change positions approximately every 15 minutes. (AR 737 (answering the Assessment's question of "how often" must Plaintiff alternate sitting and standing with the following hand-written answer: "anxiety disorder, restless. BIPOLAR. Changes positions [every] 15 min. treated w[ith] lamotrigine").)

In that same Assessment, Dr. Harter recommends the following postural limitations: Plaintiff can never (1) climb, (2) balance, (3) stoop, (4) crouch, or (6) crawl, and (7) may only occasionally kneel. (AR 738.) Just below the checkboxes where Dr. Harter selects these limitations, Dr. Harter hand-writes the following explanation: "DIZZY, makes her fall w[ith] most of above activities." (AR 738.) Dr. Harter further opines that Plaintiff has significant manipulative limitations in both hands. (AR 738.) Specifically, Dr. Harter pronounces that Plaintiff can only occasionally engage in "handling (simple grasping, gross manipulation)", "fine manipulation", or "feeling (skin reception);" but finds Plaintiff can continuously engage in "reaching." (AR 738.)

Dr. Harter's Assessment also states that Plaintiff has the following environmental limitations caused by her impairments: (1) heights, (2) moving machinery, (3) temperature extremes, (4) chemicals, and (6) noise. (AR 739.) In another hand-written

explanation below these limitations, Dr. Harter explains that Plaintiff's "migraines [are] worsened by the above." (AR 739.)

The ALJ found that Dr. Harter's medical opinion is contradicted by the opinion of Dr. Herbert Meites, M.D. (AR 25.) Dr. Meites is a non-examining state reviewer that did not treat or examine Plaintiff. On July 11, 2013, Dr. Meites provided a Disability Determination Explanation following review of Plaintiff's available records. (AR 100-16.) Therein, Dr. Meites opined that Plaintiff had the following exertional limitations: (1) "Occasionally (occasionally is cumulatively 1/3 or less of an 8 hour day) lift and/or carry (including upward pulling): 50 lbs;" (2) "Frequently (frequently is cumulatively more than 1/3 up to 2/3 of an 8 hour day) lift and/or carry (including upward pulling): 25 lbs;" (3) "Stand and/or walk (with normal breaks) for a total of: 4 hours;" (4) "Sit (with normal breaks) for a total of: About 6 hours in an 8-hour workday;" and (5) "Push and/or pull (including operation of hand and/or foot controls): Unlimited other than shown for lift and/or carry." (AR 109.) Dr. Meites further indicates that Plaintiff has the following postural limitations: (1) "Climbing Ramps/stairs: Occasionally," (2) "Climbing Ladders/ropes/scaffolds: Occasionally," (3) "Balancing: Occasionally," (4) "Stooping (i.e., bending at the waist): Occasionally," (5) "Kneeling: Occasionally," (6) "Crouching (i.e., bending at the knees): Occasionally," and (7) "Crawling: occasionally." (AR 109-10, 125-26.)

Additionally, Dr. Meites did not find Plaintiff to have "manipulative," "visual," or "communicative" limitations. (*See* AR 110.) Dr. Meites indicated the following environmental limitations: (1) "Extreme cold: Avoid even moderate exposure," (2) "Extreme heat: Unlimited," (3) "Wetness: Unlimited," (4) "Humidity: Unlimited," (5) "Noise: Avoid even moderate exposure," (6) "Vibration: Unlimited," (7) "Fumes, odors, dusts, gases, poor ventilation, etc.: Unlimited," and (8) Hazards (machinery, heights, etc.): Avoid even moderate exposure." (AR 110, 126.) Dr. Meites further recommended that "Given [Plaintiff's] complaints w[ith] regards to med[dication]s, [Plaintiff] should

not be required to engage in [more than] occasional postural activities or 4 h[ou]rs standing." (AR 111.)

Because the ALJ found that Dr. Harter's medical opinion is contradicted by the opinion of Dr. Herbert Meites, M.D (AR 25), and that Dr. Meites opined Plaintiff had greater abilities than those identified in Dr. Harter's opinion (AR 23). Accordingly, the ALJ could discount Dr. Harter's opinion for specific and legitimate reasons supported by substantial evidence. *Lester*, 81 F.3d at 830-31.

In his decision, the ALJ provides several reasons for discounting Dr. Harter's opinion in favor of Dr. Meites's opinion. First, the ALJ states that Dr. Meites's opinion was more consistent with the overall record, while Dr. Harter's was inconsistent. Second, the ALJ states that Dr. Harter's opinion "appeared to be based [only] on the [Plaintiff's] subjective complaints." Third, the ALJ states that Dr. Harter's opinion on Plaintiff's manipulative limitations in her hands is not supported by any medically determinable impairment. Furthermore, the ALJ notes that the record contained no objective testing with regard to Plaintiff's headaches, such as MRI, CT, MRA, or EEG. (AR 25.)

In her briefs, Plaintiff argues that the ALJ erred in rejecting Dr. Harter's opinion. Specifically, Plaintiff contends that (1) Dr. Harter's opinion is not inconsistent with the medical record; (2) Dr. Harter's opinion was based on more than just Plaintiff's subjective complaints; and (3) Dr. Harter's finding of manipulative limitations in Plaintiff's hands are supported by the record . (Doc. 25 at 15.) The Court will discuss each of Plaintiff's arguments.

### a. Inconsistency with the medical record.

Plaintiff first argues that the ALJ, as a layperson, was not qualified to find that Dr. Harter's opinion was inconsistent with the medical record, and that the ALJ did not identify any perceived inconsistencies. (Doc. 25 at 12.) The Court disagrees. A fair reading of the ALJ's decision reveals that the ALJ identified several inconsistencies between Dr. Harter's opinion and the medical record. Specifically, the ALJ notes that Dr. Harter's opinion is based largely on Plaintiff's subjective complaints, contains no

objective testing to support her diagnosis of Plaintiff, and is contradicted by the medical opinion of Dr. Meites. (Doc. 25.)

To the extent Plaintiff argues that each of these reasons fails in their own right, the Court discusses those arguments below.

### b. Subjective complaints.

A claimant's subjective description of symptoms in necessarily relied on by a doctor when determine a conditions severity. *Engquist v. Colvin*, No. CV-11-02455-PHX-GMS, 2013 WL 1409923, at *7 (D. Ariz. Apr. 8, 2013) ("Determining the severity of [a condition] necessarily involves significant reliance on the claimant's description of the symptoms, the opinions of the doctor—especially a specialist[]—should be given great weight."); *see also Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) (finding that an ALJ erred by discounting a claimant's treating physicians' opinions, which diagnosed the claimant with fibromayalgia, because those opinions relied on the claimant's subjective symptom testimony).

But an ALJ may reject a treating physician's opinion when it is based solely on the claimant's subjective complaints, and the claimant's testimony is determined not to be credible. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) ("The ALJ rejected [treating physician] Dr. Ngaw's opinion for lack of objective support, noting that Dr. Ngaw relied only on [claimant] Tonapetyan's subjective complaints and on testing within Tonapetyan's control. Because the present record supports the ALJ in discounting Tonapetyan's credibility . . . [the ALJ] was free to disregard Dr. Ngaw's opinion, which was premised on her subjective complaints."); *see also Engquist*, 2013 WL 1409923, at *7 ("Still, the [doctors'] opinions—especially those on the issue of disability—must have a basis in the medical evidence for the ALJ to be required to give them credit.").

Plaintiff argues that the ALJ engaged in unsupported speculation when he discounted the opinion of Dr. Harter because her opinion "appeared to be based [only] on the [Plaintiff's] subjective complaints." (Doc. 25 at 13.) The Court disagrees. The record shows that Dr. Harter regularly provided Plaintiff with treatments intended to assist her

with her headaches, including administering "repeated chemodenervation injections" and prescribing medication such as Topiramate, Imitrex, and Migranal. (*See* AR 436, 433, 430, 427, 424, 421, 538, 535, 532, 529.) But these treatments were conducted based on Plaintiff's subjective report of symptoms. No objective testing was conducted.

Plaintiff argues that Dr. Harter relied on more than her subjective complaints, and that the ALJ erred by discounting her opinion for its reliance on Plaintiff's subjective complaints. (*See* Doc. 25 at 13 n. 13, 14 (citing *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (holding the ALJ improperly discounted the opinions of four sources that were based on their observations, diagnoses, and prescriptions, in addition to the plaintiff's self-reports); *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1300 (9th Cir. 1999) (holding the ALJ improperly discounted the opinion of a psychologist that did not take the plaintiff's statements at face value, but had "confirmed his complaints with his mother, . . . conducted extensive objective psychological testing [and] explained in detail how the results of each test supported his diagnoses."); *Davis v. Colvin*, No. CV-13-00679-TUC-CRP, 2015 WL 5730581, at *6-8 (D. Ariz. Sept. 30, 2015) (holding the ALJ improperly rejected the opinion of a treating source which was based not only on the plaintiff's subjective reports of symptoms but also on the source's own observations and those of other doctors, who diagnosed both mental and physical impairments); *Ferranti v. Colvin*, No. CV-13-02345-PHX-DJH, Order, Doc. 27 at 8 (D. Ariz. Mar. 16, 2015) (holding the ALJ improperly speculated that the source had relied too heavily on the plaintiff's self-report, while there was evidence of plaintiff's post-surgery difficulties and numerous attempts to obtain relief)).)

Plaintiff's argument is not persuasive, and the instant case is easily distinguished from those listed above. Unlike the treating physicians' opinions in those cases, which the courts found to be supported by additional objective evidence, Dr. Harter's opinion is exclusively based on Plaintiff's self-reports. Specifically, Dr. Harter's diagnosis is based on Plaintiff's headache questionnaires and migraine diaries (AR 378-81, 414-15, 444-46), and Dr. Harter's notes point to no other support for her diagnosis other than Plaintiff's

self-reporting. And, as discussed below, the ALJ found that Plaintiff's testimony is not credible.

Plaintiff further contends that the absence of objective tests is insufficient to reject the opinion of Dr. Harter as to Plaintiff's migraines. (Doc. 25 at 16.) But Plaintiff mischaracterizes the ALJ's opinion. As discussed above, the ALJ did not reject Dr. Harter's opinion *solely* because objective tests were not conducted. Rather, the ALJ considered the lack of objective testing alongside the fact that Dr. Harter's opinion is based on Plaintiff's subjective complaints. Because the ALJ determined Plaintiff's subjective testimony is not credible, the ALJ did not err in rejecting Dr. Harter's opinion that is based solely on Plaintiff's subjective complaints. *See Tonapetyan*, 242 F.3d at 1149.

### c. Manipulative limitations.

"[A]n ALJ errs when he discounts another source's entire testimony because of inconsistency with evidence in the record, when the ALJ has divided the testimony into distinct parts and determined that only one part of the testimony is inconsistent." *Dale v. Colvin*, 823 F.3d 941, 945 (9th Cir. 2016). Plaintiff argues that the ALJ erred by rejecting Dr. Harter's opinion in whole because it lacks medical support for the manipulative limitations assessed. (Doc. 25 at 15.) The Court disagrees.

The ALJ's reasoning that Dr. Harter's opinion on Plaintiff's manipulative limitations lacked of support in the record was expressly limited to discounting that portion of Dr. Harter's opinion. The ALJ did not, as Plaintiff contends, discount the entirety of Dr. Harter's opinion based on the record's lack of support for her manipulative limitations. The ALJ discounted the remaining limitations provided in Dr. Harter's opinion for other specific and legitimate reasons, including reliance on Plaintiff's incredible-subjective complaints.

Plaintiff further contends that Dr. Harter's finding that Plaintiff has manipulative limitations in her hands is supported by Plaintiff's use of the drug Topiramate to treat her migraines, because Topiramate has the side effect of causing paresthesia. (Doc. 25 at 15.)

But Plaintiff's argument has no support in the record and is not persuasive. While Plaintiff did testify that she experienced numbness and tingling in hands and feet, her testimony does not establish a causal connection between taking Topiramate and her symptoms. Additionally, Dr. Harter did not make the connection Plaintiff proposes, and instead linked the "ever increasing Tompiramate dose" to Plaintiff's "very poor memory." (AR 735.)

The Court could not find, and Plaintiff does not provide, anywhere in the record that Dr. Harter identified an underlying medically determinable impairment as the source of Plaintiff's manipulative limitations. Accordingly, the ALJ did not err by discounting the manipulative limitations portion of Dr. Harter's opinion as inconsistent because the "assessed manipulative limitations were not support[ed] by any medically determinable impairment." (AR 25.)

### d. Contradiction by state reviewer.

Plaintiff argues that the opinion of Dr. Meites, a state reviewer, was insufficient to reject the opinion of the treating doctor. (Doc. 25 at 14.) "[A] finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected." *Orn v. Astrue*, 495 F.3d 625, 631–32 (9th Cir. 2007) quoting S.S.R. 96–2p at 4 (Cum. Ed. 1996).

The ALJ found that the opinion of Dr. Harter was not entitled to controlling weight because (1) the assessed "manipulative limitations were not supported by any medically determinable impairment", (2) "[t]he assessment that Plaintiff has had her limiting headaches since 14 was undermined by [Plaintiff's] ability to work at substantial gainful activity levels since then," and (3) "there was no objective testing done . . . for the [Plaintiff's] headaches." (AR 25.) Therefore, the ALJ did not err in finding that the opinion of Dr. Harter was not entitled to controlling weight.

Plaintiff argues that the ALJ committed legal error by according Dr. Meites's opinion significant weight because he was a non-examining physician. (Doc. 25 at 14.) The ALJ found that the opinion of Dr. Meites was "consistent with the overall record and supported by objective studies, treatment records, examination results, . . . the [Plaintiff's] reported activities," and "subjective allegations with regard to her medication." (AR 24.) The ALJ cited to Dr. Meites's explanation in the record. (AR 110-11, 126-27.) There, Dr. Meites provides the following "Additional Explanation":

> At the reconsideration level, [Plaintiff reports] persistence of migraines and fatigue. 4/9/13 f/u through Dr. Harter shows @ least 50% improvement in migraines since beginning botox [treatment] – [Plaintiff] had [normal] gait w[ith] good motor control @ 5/22/13 f/u, but she did appear to be in moderate pain. [Plaintiff] presented 6/9/13 for [right] arm swelling an ankle inflammation – forearm x-ray was [normal] and PE shows EP 128/86, [height] 62 [inches], [weight] 210 [pounds], clear lungs, heart RRR, nontender back w/FROM, mid ankle tenderness w/FROM/strength, [normal] neuro, 2+ DTRs, intact sensation, minimal LE swelling w/FROM, and moderately swollen [right] arm compared to [left] w[ith] global tenderness but FROM/good strength. ADLS indicate that swelling has been ruled a reaction to new thyroid med[ications] – [Plaintiff] does self-care, cares for her children, prepares simple foods, sweeps/does laundry, drives, goes out alone, shops in stores, walks 2 min[utes] before resting due to swelling, and has difficulty squatting/standing/kneeling/climbing stairs. Evidence suggests that [Plaintiff's symptoms] have improved w[ith] botox [treatment], through her condition appears > nonsevere (as initially determined) – so as to avoid aggravating her migraines, [Plaintiff] should avoid extreme cold, noise, and heavy machinery. Given her complaints w[ith] regards to med[ications], [Plaintiff] should not be required to engage in > occasional postural activities or 4 hours standing.

(AR 110-11.) In short, Dr. Meites states that while Plaintiff does report persistent migraines and fatigue, her symptoms improved with treatment, and her daily activities show that her condition is nonsevere, provided that she avoid aggravating her migraines through exposure to extreme cold, noise, and heavy machinery. (*Id.*)

The ALJ gave significant weight to the opinion provided by Dr. Meites "because it was consistent with the overall record and supported by objective studies, treatment records, examination results, and [Plaintiff's] reported activities." (AR 24.) Because the opinion of Dr. Meites was supported by independent clinical findings, it constituted substantial evidence. *Thomas*, 278 F.3d at 957 ("The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are

consistent with independent clinical findings or other evidence in the record.") (citation omitted). Therefore, the ALJ did not err in giving more weight to the opinion of Dr. Meites than to the opinion of Dr. Harter.

Plaintiff further argues that the opinion of Dr. Meites relies on an outdated record because Dr. Meites was not able to consider the second of Dr. Harter's two Headache Residual Functional Capacity Questionnaires. (Doc. 25 at 11) True, Dr. Meites review, which was done in July 2013, could only have considered Dr. Harter's first Headache Residual Functional Capacity Questionnaire (AR 412-13), which was completed in May 2013. But a comparison of both questionnaires reveals that Dr. Harter's findings remained virtually identical as to Plaintiff's migraines, with the only difference being that their frequency had increased from "almost every day" to "daily." (AR 412, 735.) But there is no indication that the severity of the headaches had increased. Nor that treatment had been rendered ineffective.

Dr. Meites opinion was not based on an outdated record, and the ALJ did not err by assessing it significant weight.

### e. Summary.

The ALJ provides specific and legitimate reasons for discounting the opinion of Dr. Harter. Specifically, the ALJ reasons that (1) Dr. Harter's opinion regarding Plaintiff's migraines is solely based on Plaintiff's incredible-subjective complaints, and (2) Dr. Harter's opinion as to Plaintiff's manipulative limitation is inconsistent with the medical record. Because these are specific and legitimate reasons for discounting Dr. Harter's opinion, the Court finds that the ALJ did not err in doing so.

### 3. Sharon Steingard, D.O.

Dr. Steingard, a consultative examining physician for the Arizona Department of Economic Security, examined Plaintiff on January 14, 2013. (AR 398.) Dr. Steingard made the following findings:

> This [Plaintiff] is a separated Hispanic female who reported that she had intermittent episodes of depression. She has never been in formal psychiatric care or treatment. It was not clear what her medication management for depression has been. She reported that she has been abused

but is not describing symptomatology rising to the level of posttraumatic stress disorder. She complained of problems with disturbed sleep, energy, libido, concentration, memory, irritability, and motivation. The mental status examination was notable for her tearfulness. She was passively cooperative, complaining of pain. Attention span was slightly diminished, and I had to repeat a number of instructions. She described some intermittent suicidal ideation without any intention or plan.

(AR 401.) Dr. Steingard diagnosed Plaintiff with "[m]ajor depression, recurrent, without psychosis." (AR 401.) Dr. Steingard opined that Plaintiff had the following limitations:

Understanding and Memory: . . . Many instructions had to be repeated. She is expected to need a lot of instructions repeated on any job, even for simple directions.

Sustained Concentration and Persistence: . . . Regarding pace and persistence, she did not need extra encouragement to complete tasks. She is likely to need encouragement on the job over the course of the full workday. Slight diminishment in her concentration was noted, and that is expected to worsen over the course of a full workday.

Social Interaction: . . . She was neat and clean and on time. She does appear depressed, and that is going to interfere with her socialization. She described very poor judgment in her past job when dealing with an interpersonal problem. She was tearful, and that would be distracting to the people around her.

Adapting to Change: . . . She has very limited ability to deal with confrontational situations, describing a poor response to a past problem at work. She has difficulty describing how she would deal with a hypothetical emergency situation.

She appears capable of managing benefits if deemed eligible to receive them.

(AR 403-04.)

The ALJ found that Dr. Steingard's medical opinion is contradicted by the opinions of Dr. Jay Rankin, M.D., and Dr. Ruth Ann Mertens, Ph.D. (AR 25.) Dr. Jay Rankin, M.D. reviewed Plaintiff's medical evidence prior to the initial consideration of the Plaintiff's disability claim. (AR 78-81, 91-94.). Dr. Rankin opined that Plaintiff has no limitations in her understanding and memory. (AR 80, 93.) Dr. Rankin opined that Plaintiff has the following concentration and persistence limitations: (1) "ability to carry out very short and simple instructions: [n]ot significantly limited;" (2) "ability to carry out detailed instructions: [m]oderately limited;" (3) "ability to maintain attention and

- 15 -

concentration for extended periods: [m]oderately limited;" (4) "ability to perform activities within a schedule, maintain regular attendance, and be punctual with customary tolerances: [m]oderately limited;" (5) "ability to sustain an ordinary routine without special supervision: [n]ot significantly limited;" (6) "ability to work in coordination with or in proximity to others without being distracted by them: [m]oderately limited;" (7) ability to make simple work-related decisions: [n]ot significantly limited;" and (8) "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods: [m]oderately limited." (AR 80, 93.)

Dr. Rankin opined Plaintiff has the following social interactions limitations: (1) "ability to interact appropriately with the general public: [m]oderately limited;" (2) "ability to ask simple questions or request assistance: [n]ot significantly limited" (3) "ability to accept instructions and respond appropriately to criticism from supervisors: [m]oderately limited;" (4) "ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes: [m]oderately limited;" and (5) ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness: [m]oderately limited." (AR 80, 93.) Dr. Rankin opined Plaintiff does not have adaptation limitations. (AR 81, 94.)

In his opinion, Dr. Rankin states

> The [Plaintiff's Medically Disabling Impairments] can reasonably be expected to produce the alleged pain and symptoms, and the objective medical evidence alone reasonably substantiates the [Plaintiff's] allegations about the intensity, persistence and functional limited effects of the symptoms.

> 33 [year-old] alleging depression, chronic migraines, diabetes, hypothyroidism, acid reflux, and internal hemorrhoids. Mult[iple observations] 12/2011-10/2012 primarily for menstrual [abnormalities]/pregnancy & NS conditions. Mult[iple observations] w[ith] depression noted in prob[lems] list but no [diagnoses] in MER, or complaints. Current MSCE w[ith multiple abnormalities] on MSE; MMSE 27/30; Axis 1 major depression recurrent w[ithout] psychosis. MSS: some limits expected to last 12 mo[nths]; not clear if [treatment] resistant or not; expected to need man directions repeated even simple ones; likely to need encouragement to complete full workday; slight diminished concentration expected to worsen over workday; depression to interfere w[ith] socialization; Hx poor judgment; tearfulness would distract others; limited

- 16 -

ability to deal w[ith[ confrontation; prob[lems] describing how she would deal w[ith] emergency situation; able to manage. [Activities of Daily Living] mildly to moderately impaired.

Lesser or no weight given to the opinion evidence from MSCE. This opinion evidence about the individual's limitations and restrictions is more restrictive than the findings in this rating but are given little/no weight because of heavy reliance on the [Plaintiff], internally inconsistent reports, brief treatment history, conflict with other evidence, no complaints to pcp, lack of support by other evidence, snapshot CE-overestimate of limitations.

The [Plaintiff] is able to perform work where interpersonal contact is incidental to work performed, e.g. assembly work; complexity of tasks is learned and performed by rote, few variables, little judgment; supervision required is simple, direct and concrete (unskilled).

(AR 81, 94.)

Dr. Ruth Ann Mertens, Ph.D. reviewed Plaintiff's medical evidence prior to the reconsideration of the denial of Plaintiff's disability claim. (AR 111-13, 127-129.) In her report, Dr. Mertens opines that Plaintiff has no limitations in her understanding and memory. (AR 111, 127.) Dr. Mertens states that Plaintiff has the following concentration and persistence limitations: (1) "ability to carry out very short and simple instructions: [n]ot significantly limited;" (2) "ability to carry out detailed instructions: [m]arkedly limited;" (3) "ability to maintain attention and concentration for extended periods: [m]oderately limited;" (4) "ability to perform activities within a schedule, maintain regular attendance, and be punctual with customary tolerances: [m]oderately limited;" (5) "ability to sustain an ordinary routine without special supervision: [n]ot significantly limited;" (6) "ability to work in coordination with or in proximity to others without being distracted by them: [m]oderately limited;" (7) ability to make simple work-related decisions: [n]ot significantly limited;" and (8) "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods: [m]oderately limited." (AR 111-12, 127-28.)

Dr. Mertens further concludes Plaintiff has the following social interactions limitations: (1) "ability to interact appropriately with the general public: [m]arkedly limited;" (2) "ability to ask simple questions or request assistance: [n]ot significantly

limited" (3) "ability to accept instructions and respond appropriately to criticism from supervisors: [m]oderately limited;" (4) "ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes: [m]oderately limited;" and (5) ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness: [m]oderately limited." (AR 112, 128.) Dr. Mertens opines Plaintiff does not have adaptation limitations. (AR 112, 128.) Dr. Mertens closes her report by stating that, "[at reconsideration], I have reviewed all the evidence in file, including any received since the initial decision, and the assessment of [Dr. Rankin of] 2/1/2013 is affirmed as written." (AR 112, 128.)

Because the ALJ found Dr. Steingard's medical opinion was contradicted by the opinions of Drs. Rankin and Mertens (AR 19), the ALJ could discount Dr. Steingard's opinion for specific and legitimate reasons supported by substantial evidence. *Lester*, 81 F.3d at 830-31.

Ultimately, the ALJ gave little weight to the opinion of Dr. Steingard for two reasons: (1) "Dr. Steingard's assessments appeared to be heavily based on the [Plaintiff's] reporting, which . . . were misrepresented;" and (2) "the assessments were inconsistent with the record as a whole, including the [Plaintiff's] minimal treatment history and reported activities." (AR 24.) Plaintiff argues that the ALJ erred as to both.

### a. Plaintiff's subjective reporting and misrepresentations.

The ALJ's first reason for discounting Dr. Steingard's opinion is that it was heavily based on Plaintiff's misrepresented self-reporting. (AR 24.) Plaintiff argues that the fact that Dr. Steingard's opinion was heavily based on "misrepresentations" by Plaintiff is insufficient to reject her opinion. (Doc. 25 at 18.) The Court disagrees.

"The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) quoting *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir.2002). In *Bayliss*, the court affirmed the rejection of a doctor's opinion that the plaintiff suffered from a mental impairment, when the opinion

"was not supported by clinical evidence and was based on the [plaintiff's] subjective complaints." *Id.* at 1217. *See also Wilder v. Comm'r of Soc. Sec. Admin.*, 545 F. App'x 638, 640 (9th Cir. 2013) ("to the extent that [the doctor's] opinion was based on [plaintiff's] subjective reporting of her symptoms, the opinion lacks weight because the ALJ found [plaintiff] not credible.").

The ALJ found that the Plaintiff's "inconsistent reporting [to Dr. Steingard] negative[ly] affected the [Plaintiff's] credibility." (AR 23.) The ALJ found that Plaintiff reported to Dr. Steingard that Plaintiff "spent most of her day in bed, only getting up to take her medication, when reminded by her mother, and occasionally help with cooking and help the children with their homework, and go grocery shopping." (AR 23.) But Plaintiff's and Plaintiff's mother's function reports showed that Plaintiff "was able to perform house chores, get around as needed by driving or riding a car, go shop for food, clothes, and 'stuff we need,' and attend teacher conferences and school meetings." (AR 23.)

The Court finds that Plaintiff's daily activities are inconsistent with Plaintiff's symptoms, the ALJ did not err in finding that Dr. Steingard had relied on Plaintiff's misrepresentations.

### b. Lack of mental health treatment.

The ALJ's second reason for discounting Dr. Steingard's opinion is that her assessments are inconsistent with the record as a whole, including Plaintiff's minimal treatment history and reported activities. (AR 24.) Plaintiff argues that the ALJ may not discount the opinion of Dr. Steingard on the fact the Plaintiff was not undergoing mental health treatment at the time. (Doc. 25 at 19.) Plaintiff's argument fails.

"The ALJ is permitted to consider lack of treatment in his credibility determination." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). In *Burch*, the ALJ partially discredited plaintiff's testimony on her depression noting that "[plaintiff] admits she is not being treated for [depression]. . . . At times, she has been given psychotropic medication, but she does not carry a diagnosis of depression and she has not received care

from a mental health practitioner." *Id*. The Court held that the ALJ gave clear, convincing and specific reasons to partially reject the plaintiff's testimony. *Id*.

The ALJ found that as of January 14, 2013, the Plaintiff had had "no formal health treatment, no hospitalizations as a result of mental symptoms, and no counseling." (AR 22.) Here, just like in *Burch*, Plaintiff had been given psychotropic medication but had not been diagnosed or treated by a mental health practitioner. Accordingly, the ALJ did not err by partially relying on Plaintiff's lack of treatment as a basis for discounting Dr. Steingard's opinion.

Plaintiff argues the Ninth Circuit rejects "lack of treatment as a basis for discounting a [plaintiff's] mental limitations." (Doc. 25 at 19 citing *Garrison v. Colvin*, 759 F.3d 995, 1018, fn. 24 (9th Cir. 2014)). The Court does not agree, and Plaintiff's reliance on *Garrison* is misplaced. *Garrison* stands for the proposition that short-lived periods of temporary improvement, and remissions from going off medications, do not undermine allegations of mental impairments. *Garrison*, 759 F.3d at 1018, fn. 24. In *Garrizon*, the Ninth Circuit held that the ALJ erred in discounting a claimant's testimony because some of her bouts of remission resulted from her going off her medications. *Id*. The court stated the ALJ's finding was improper because the claimant "going off their medication" was "at least in part a result of [the plaintiff's] underlying bipolar disorder and her other psychiatric issues." *Id*.

Unlike in *Garrison*, here Plaintiff did not allege that her mental impairment or going off her medications precluded her from seeking or staying in treatment. Therefore, the ALJ could properly consider Plaintiff's treatment history to discount Dr. Steingard's opinion.

### c.    Summary.

The ALJ provides specific and legitimate reasons for discounting the opinion of Dr. Steingard, including (1) that Dr. Steingard relies on Plaintiff's incredible-subjective reporting and misrepresentations, and (2) Plaintiff's had no history of mental health

treatment prior to her examination with Dr. Steingard. Accordingly, the ALJ did not err in discounting Dr. Steingard's medical opinion.

**B.    The ALJ did not err in evaluating plaintiff's symptom testimony.**

In his decision, the ALJ found that Plaintiff's subjecteive testimony is not credible. (AR 22.) Plaintiff argues that the ALJ erred in evaluating the credibility of Plaintiff's symptom testimony. (Doc. 25 at 20-21.)

**1.    Legal Standard.**

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. *Garrison*, 759 F.3d 1014-15 (citing *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). The claimant is not required to show objective medical evidence of the pain itself or of a causal relationship between the impairment and the symptom. *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996). Instead, the claimant must only show that an objectively verifiable impairment "could reasonably be expected to produce his pain." *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1282); *see also Carmickle v. Comm'r, SSA*, 533 F.3d 1155, 1160-61 (9th Cir. 2008) ("requiring that the medical impairment 'could reasonably be expected to produce' pain or another symptom . . . requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon"). Second, if a claimant shows that she suffers from an underlying medical impairment that could reasonably be expected to produce her pain or other symptoms, the ALJ must "evaluate the intensity and persistence of [the] symptoms" to determine how the symptoms, including pain, limit the claimant's ability to work. *See* 20 C.F.R. § 404.1529(c)(1).

"[A]lthough we will not fault the agency merely for explaining its decision with 'less than ideal clarity,' we still demand that the agency set forth the reasoning behind its

decisions in a way that allows for meaningful review." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) quoting *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014). "A finding that a claimant's testimony is not credible 'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" *Id*. at 493 (quoting *Bunnell*, 947 F.2d at 345-46.) "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir.1998)).

In weighing a claimant's credibility, the ALJ may consider many factors, including, "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Smolen*, 80 F.3d at 1284; *see Orn*, 495 F.3d at 637-39. The ALJ also considers "the claimant's work record and observations of treating and examining physicians and other third parties regarding, among other matters, the nature, onset, duration, and frequency of the claimant's symptom; precipitating and aggravating factors; [and] functional restrictions caused by the symptoms . . . ." *Smolen*, 80 F.3d at 1284 (citation omitted).

At this second step, the ALJ may reject a claimant's testimony regarding the severity of his or her symptoms only if the ALJ "makes a finding of malingering based on affirmative evidence," *Lingenfelter*, 504 F.3d at 1036 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006)), or if the ALJ offers "clear and convincing reasons" for finding the claimant not credible. *Carmickle*, 533 F.3d at 1160 (quoting *Lingenfelter*, 504 F.3d at 1036). "The clear and convincing standard is the most demanding required in Social Security Cases." *Garrison*, 793 F.3d at 1015 (quoting *Moore v. Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

1

2

**1. The ALJ gave clear and convincing reasons for discounting Plaintiff's symptom testimony.**

3

4

5

6

7

8

9

10

11

12

In his decision, the ALJ first found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. (AR 21.) Second, the ALJ found that "[Plaintiff's] statements concerning the intensity, persistence, and limiting effects of [her] symptoms are not credible and that [Plaintiff's] self-imposed limitations were not supported by medical records." (AR 21.) The ALJ found that "[w]hile not exclusive, objective medical evidence, treatment records, examination results, opinions of examining and nonexamining sources, and the [Plaintiff's] reported activities did not substantiate her allegations of disabling limitations." (AR 21.) In other words, the ALJ found Plaintiff's statements not credible to the extent she claims she is unable to perform in a competitive work environment. (AR 21.)

13

14

15

16

17

18

19

20

21

22

23

At the hearing Plaintiff testified that: (a) one of her most serious health problems is her migraines, (AR 44); (b) her migraines affect her ability to work during the daytime because her headaches become really bad due to the light, (AR 44-45); (c) her medication is starting to make her hands and feet numb and tingly, and her hands and feet cramp, (AR 45); (d) she believed the numbness, tingling, and cramps are caused by her taking the medication Topiramate, (AR 45); (e) she has migraines every day, (AR 46) and it is one constant headache that fluctuates in intensity, (AR 46-47); (f) she has strong migraines for three to four days that prevent her from going anywhere or doing anything, result in vomiting, and cause her to stay in her bedroom, (AR 49); and (g) on an average day, if she wakes up having a migraine she stays home and administers medication (AR 49-50).

24

25

26

27

28

In his decision, the ALJ provides several reasons for discounting Plaintiff's testimony. Specifically, the ALJ identifies the record's lack of objective tests and studies, physical exams, treatment history, and inconsistent statements regarding activities of daily living. (AR 21-23.) Plaintiff contends that the ALJ erred as to each of these findings. The Court will address each reason below.

### a. Objective tests and studies.

The ALJ's first reason for discounting Plaintiff's testimony is that the "[o]bjective tests and studies did not support the [Plaintiff's] allegations of disabling limitations." (AR 21.) But the ALJ found migraines to be a severe impairment and thus he could not discount Plaintiff's testimony solely because it was not fully supported by the medical evidence in the record. *See Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) ("[O]nce the claimant produces objective medical evidence of an underlying impairment, an adjudicator may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain."). This is not a valid reason for discounting Plaintiff's symptom testimony.

### b. Physical and mental status exams.

The ALJ's second reason for discounting Plaintiff's testimony is that "[p]hysical exams did not support the [Plaintiff's] allegations, [and] results were often unremarkable or within normal limits." (AR 23 (citing AR 529, 532, 535, 538, 377, 381, 385, 388, 421, 474, 476, 485, 491, 503, 623, and 688).) The ALJ also found that the Plaintiff's mental status exams did not support her allegations. (*Id.* (citing AR 330, 373, 381, 385, 388, 392, 421, 529, 532, 535, 538, 596, 599, 620, 623, 644, and 700).) Specifically, the ALJ noted Plaintiff was often assessed with good judgment and insight, appropriate mood and affect, normal cognition, and intact recent and remote memory. (AR 22.) The ALJ also noted that Plaintiff was assigned a GAF score of 57. (AR 22.) The ALJ further noted that Plaintiff often denied mental health symptoms, depression, or headaches. (AR 22.)

These findings are valid reasons for discounting Plaintiff's symptom testimony. The ALJ cited to the observations of several health providers regarding Plaintiff's physical and mental status and the result of those exams, which often contradicted the alleged severity of Plaintiff's symptoms. *Smolen*, 80 F.3d at 1284. Accordingly, the ALJ did not err by partially relying on Plaintiff's physical and mental status exams results to discredit Plaintiff's testimony.

### c. Treatment history.

The ALJ's third reason for discounting Plaintiff's symptom testimony is that Plaintiff's treatment history undermined her allegations regarding the intensity, persistence, and limiting effects of her mental impairment. (AR 22.) The ALJ noted that Plaintiff had only eight visits to the Jewish Family & Children's Services, but outside of that had no formal mental health treatment, no hospitalizations as a result of mental symptoms, and no counseling. (AR 22.)

The Court finds that this justification by the ALJ is not supported by the record. Specifically, the ALJ failed to consider Plaintiff's substantial treatment evidence from Dr. Harter. This was error, because the ALJ did not weigh all evidence that would support Plaintiff's allegations. *See Davis*, 2015 WL 5730581, at *10 (finding the ALJ erred by not crediting a doctor's opinion, when the doctor's patient continued to experience pain even after aggressive treatment and referrals to specialists).

### d. Inconsistent statements regarding activities of daily living.

The ALJ's final reason for discounting Plaintiff's testimony is that Plaintiff's symptom reports were inconsistent with her activities of daily living. (AR 23.) "In reaching a credibility determination, an ALJ may weigh inconsistencies between the claimant's testimony and his or her conduct, daily activities, and work record, among other factors." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (citation omitted).

Here, the ALJ noted specific instances where the Plaintiff's self-reports and medical record contradict her testimony and alleged symptoms. (AR 23.) For example, Plaintiff had reported to Dr. Steingard that she "spent most of her day in bed, only getting up to take her medication, when reminded by her mother, and occasionally help with cooking and help the children with their homework, and go grocery shopping." (AR 23.) But, according to contemporaneous function reports by Plaintiff and Plaintiff's mother, Plaintiff "was able to perform house chores, get around as needed by driving or riding a car, go shop for food, clothes, and 'stuff we need,' and attend teacher conferences and school meetings." (AR 23.) Earlier in his decision, the ALJ found that Plaintiff reported

being "able to handle personal care, take care of pet[s], shop, pay bills, perform household chores, provide childcare, drive independently." (AR 20.)

The record also contains substantial evidence that Plaintiff had good and bad days. For instance, at the hearing, Plaintiff testified that some days she would not be able to come out of the house because the light would worsen her headaches (AR 44), but during that same hearing, Plaintiff testified that she drives herself to Mexico three or four times a year (AR 57). Furthermore, the credibility of Plaintiff's symptom testimony is undermined by the fact that Plaintiff claims she has had these headaches since the age of 14, but Plaintiff's work history shows that she maintained substantial gainful activity levels for almost twenty years after her allegedly-disabling headaches began. (AR 25 (citing AR 413).)

The Court finds that the ALJ did not err when he concluded that Plaintiff's daily activities and statements are inconsistent with her alleged symptoms. Such inconsistency is a valid reason for discounting Plaintiff's symptom testimony.

### e. Summary.

The Court finds the ALJ has provided clear and convincing reasons for discounting Plaintiff's testimony. Consequently, the ALJ did not err in discrediting Plaintiff's testimony.

### B. The ALJ Did Not Err In Assessing Plaintiff's RFC.

#### 1. Limitation in concentration, persistence, or pace.

Plaintiff argues that the ALJ failed to consider Plaintiff's limitation in concentration, persistence, or pace when deciding Plaintiff's RFC. (Doc. 25 at 22.) Specifically, Plaintiff argues that "the ALJ's restriction [of] non-complex tasks, with little interpersonal contact, did not adequately incorporate all of [Plaintiff's] limitations." (*Id.* at 23.) "[A]n ALJ's assessment of a [plaintiff] adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony." *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008).

Dr. Steingard opined that "[r]egarding pace and persistence, [Plaintiff] did not need extra encouragement to complete tasks. She is likely to need encouragement on the job over the course of the full workday. Slight diminishment in her concentration was noted, and that is expected to worsen over the course of a full workday." (AR 403-04.) The ALJ found that Plaintiff's was "able to work in positions where the complexity of the tasks are learned and performed by rote with few variables and little judgment required; and . . . in jobs where interpersonal contact is incidental to the work performed and supervision is simple, direct, and concrete." (AR 20.)

The Court finds that the ALJ's limitations were adequate based on Dr. Steingard's assessment. That assessment specified that Plaintiff would be "likely to need encouragement on the job over the course of the full workday," (AR 403) and the limitations specified that work supervision would need to be "simple, direct, and concrete." (AR 20.) Therefore, the ALJ did not err in his consideration of Plaintiff's limitations.

## 2. Light work

Plaintiff argues that the ALJ erred by relying on the testimony of the Vocational Expert ("VE") without eliciting a reasonable explanation for an apparent conflict between the testimony of the VE and the Dictionary of Occupational Titles ("DOT"). (Doc. 25 at 24.) Plaintiff argues that the VE testified there were jobs in the national economy listed in the DOT as requiring light exertional capacities, "that is abilities to stand or walk for about six hours of an eight-hour day." (*Id.* at 25.)

At the reconsideration hearing, the ALJ asked the VE the following hypothetical

I'd like you to assume a person of the [Plaintiff's] age, education, and work experience who's able to lift 25 pounds frequently; 50 pounds occasionally; *stand or walk four out of eight hours in a workday; sit six out of eight hours in a workday.* There would be no climbing ladders, ropes, or scaffolds. This individual could occasionally climb ramps and stairs, balance, stoop, crouch, kneel, and crawl. They should avoid moderate exposure to extreme cold, excessive noise, moderate use of hazardous machinery no to include a motor vehicle, and exposure to unprotected heights. This individual would be able to work where the complexity of the task is learned and performed by rote with few variables and little judgment required; where the interpersonal contact is incidental to the work performed; and supervision is simple, direct, and concrete. . . Are there jobs in the national economy that

would fit that profile?

(AR 62-63) (emphasis added.) The VE testified that at the "light level" there would only be jobs in the positions of "assembler" (DOT code 706.687-010) and "packer" (DOT code 753.687-038). (AR 64.)

The ALJ then asked the VE whether "[his] testimony across has been consistent with the DOT and where the DOT is silent [his] training, education, and experience in the field." (AR 67.) The VE answered "yes." (AR 67.)

The DOT provides for both positions identified by the VE:

> STRENGTH: Light Work - Exerting up to 20 pounds of force occasionally (Occasionally: activity or condition exists up to 1/3 of the time) and/or up to 10 pounds of force frequently (Frequently: activity or condition exists from 1/3 to 2/3 of the time) and/or a negligible amount of force constantly (Constantly: activity or condition exists 2/3 or more of the time) to move objects. Physical demand requirements are in excess of those for Sedentary Work. *Even though the weight lifted may be only a negligible amount, a job should be rated Light Work: (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible.*

DICOT 753.687-038, 706.687-010 (emphasis added).

The Social Security Administration interprets that

> "Frequent" means occurring from one-third to two-thirds of the time. Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, *the full range of light work* requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday.

S.S.R. 83-10 (S.S.A. 1983).

As interpreted by the Social Security Administration, jobs that require lifting or carrying are considered "light work" when those activities are performed frequently, which means between one-third to two-thirds of the workday, that is between 160 and 320 minutes for an 8-hour workday. The VE was answering to a hypothetical requiring not more than four hours of standing or walking, that is 240 minutes. The positions of assembler and packer do not specify that the worker will be required to lift or carry

constantly. Consequently, those positions do not require "the full range of light work." Because both positions indicated by the VE are not in conflict with the DOT, the VE was not required to provide a reasonable explanation. Therefore, the ALJ did not err by relying on the VE's testimony.

**V.     Conclusion.**

The Court will affirm the final decision of the Commissioner. The ALJ did not err in discounting the medical opinion of Drs. Harter or Steingard, or the testimony of Plaintiff. Nor did the ALJ err in assessing Plaintiff's RFC. Accordingly,

**IT IS ORDERED** that the final decision of the Commissioner of Social Security is **affirmed**. The Clerk shall enter judgment accordingly and **terminate** this case.

Dated this 28th day of February, 2018.

Honorable John Z. Boyle
United States Magistrate Judge